FILED_____ ENTERED
_____LOGGED_____RECEIVED

JUL 1 0 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF $162,240.00 IN U.S. CURRENCY | Case No. **17-1754SAG** |

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Special Agent Robert J. Swain III, being duly sworn, hereby depose and state as follows:

## I. PROPERTY TO BE SEIZED

1.     This affidavit is submitted in support of a warrant to seize $162,240.00 in United States currency that was seized from the carry-on and checked luggage of Joseph Michael CASCIO (the "SUBJECT FUNDS") in the District of Maryland and elsewhere. As detailed herein, on April 4, 2017, law enforcement officers interviewed CASCIO as he was attempting to board a flight at Baltimore-Washington International Airport destined for Los Angeles, California. During and following that interview at BWI, officers seized $55,100.00 in U.S. Currency from CASCIO'S carry-on luggage. Although CASCIO missed his intended flight to Los Angeles, his previously checked luggage — two duffle bags — were loaded onto the aircraft and transported to California. After the flight arrived in Los Angeles, officers executed a search and seizure warrant on the duffle bags and seized an additional $107,140.00 in U.S. Currency, as well as 86 grams of marijuana and other drug paraphernalia.

2.     I submit that there is probable cause to believe that the SUBJECT FUNDS constitute (1) money furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; and (3) money used and intended to be used to facilitate a violation of the Controlled

1

Substances Act in violation of 21 U.S.C. § 841 and thus are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), and subject to seizure pursuant to 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b). Furthermore, I submit that the funds are subject to seizure and forfeiture under 21 U.S.C. § 853(a) and (f) as (a) property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a narcotics violation and (b) property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a narcotics violation.

## II.     AGENT BACKGROUND

3.      I am an "Investigative or Law Enforcement Officer of the United States" within the meaning of Section 2510(7) of Title, 18 United States Code—that is, an officer of the United States who is empowered to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

4.      I have been a federal law enforcement officer since May 1999 and have been employed as a Special Agent with Homeland Security Investigations (HSI) since October 2003. My past and current duties as an HSI Special Agent include, but are not limited to, the investigation and enforcement of federal laws regarding drug trafficking, money laundering, smuggling, asset identification and removal, document, commercial, and benefit fraud, terrorism, and intellectual property.  Prior to joining HSI, I was a Customs Inspector with the United States Customs Service, now known as the United States Customs and Border Protection (CBP).  As a Customs Inspector, my responsibilities were to detect and prevent contraband from entering into the United States, while facilitating the orderly flow of legitimate trade.  This required enforcing laws related to revenue and trade, seizure of contraband and the interdiction of such contraband.

5.      Currently, I am a member of the HSI Baltimore HIDTA Port Group, which is responsible for, among other things, investigations related to Title 19, Title 18 and Title 21 of the

United States Code in and around the U.S. Customs territory, ports of entry and related areas contiguous to them. I have participated in several investigations that have focused on the transportation and distribution techniques used by persons involved in the trafficking of illicit drugs and their proceeds. I have also participated on several court ordered Title III Wiretaps related to the trafficking of illicit drugs and the laundering of illegal proceeds, and on numerous search and seizure warrants related to the trafficking of illicit drugs and the laundering of the illegal proceeds therefrom.

    6.    Based on these experiences, and my training as a Special Agent and Customs Inspector, I am aware that:

    a.    The Los Angeles area is a major source area for drugs. As such, drugs are frequently transported from the Los Angeles area to distribution cities on the east coast, and the proceeds from the resulting drug sales are frequently returned to the Los Angeles area via drug trafficking couriers using commercial airline flights. These proceeds are generally in the form of cash, money orders, bank checks, or similar monetary instruments in amounts over $1,000.

    b.    While traveling on domestic airline flights, travelers are not required to declare to airline officials, the Transportation Security Administration ("TSA"), or CBP officers that they are traveling with large amounts of currency. Thus, individuals involved in drug trafficking will often conceal drugs and drug proceeds in their checked or carry-on baggage.

    c.    Individuals involved in drug trafficking use domestic commercial airlines because of their speed, reliability, and the ability to travel long distances with minimal law enforcement scrutiny. In addition, drug traffickers use domestic commercial airlines because it allows multiple drug traffickers to travel together with large amounts of drugs and/or drug

proceeds to ensure that their drugs and/or drug proceeds reach the intended destination if one or more of the traffickers are detained by law enforcement.

## III. **PROBABLE CAUSE**

7. On April 4, 2017, at approximately 12:00 p.m., Task Force Officer (TFO) Donald Hayes, together with K-9 Bella, and I responded to a call from the Transportation Security Administration (TSA) about a passenger traveling with over $10,000.00 in United States currency at the Baltimore Washington International Airport (BWI). The individual was later identified as Joseph Michael CASCIO.

8. Upon arriving at BWI, TFO Hayes and I interviewed CASCIO, who was stopped by TSA after a routine scan of CASCIO's bags revealed a substantial amount of U.S. currency. CASCIO was carrying a grey backpack, which contained the currency, and a black plastic carry-on bag. During the interview, CASCIO said that he was traveling to California to purchase blown glass from a glass artist nicknamed "Buck" (LNU). CASCIO stated that he had approximately $15,000.00 in U.S. currency in his possession, and that currency would be used to purchase blown glass art. CASCIO also said that he would be in California for four days, and then would return to Baltimore.

9. TFO Hayes asked CASCIO if CASCIO had checked any luggage for his flight, and CASCIO confirmed that he had. TFO Hayes asked CASCIO if the checked luggage contained additional U.S. currency, and CASCIO replied "Yes, it's about $10,000." CASCIO further stated that he was stopped about a year ago by TSA while traveling with $30,000.00 and was interviewed by the DEA regarding the currency. CASCIO stated that, following the interview with the DEA, he was able to catch his flight.

10. I thereafter contacted the DEA's Baltimore Office and verified that CASCIO was stopped by the DEA about one year ago because he was carrying U.S. currency. DEA Baltimore

4

informed me that CASCIO was carrying U.S. currency totaling approximately $50,000.00, which was split between his carry-on and checked luggage.

11.    TFO Hayes then had K-9 Bella conduct a scan of CASCIO's grey backpack and black plastic carry-on bag. K-9 Bella rendered a positive alert for the presence of the odor of narcotics by sitting next to the grey backpack, which contained the U.S. Currency.

12.    TFO Hayes then asked CASCIO additional questions about his trip to California. CASCIO again told TFO Hayes that he was flying to California to buy blown glass from a man nicknamed "Buck" (LNU). CASCIO said he did not know "Buck's" real name, but he was going to text "Buck" after he arrived in California to set up a meeting. TFO Hayes asked CASCIO for "Buck's" telephone number, but CASCIO said he did not have it. CASCIO also said that he would send "Buck" a message via Instagram.

13.    CASCIO then changed his story and stated that he was meeting with a man named "KYLE" (LNU), who was acting as a middle man for the blown glass. CASCIO provided a telephone number for KYLE of 908-433-3176. CACIO also provided us with his own mobile telephone number, 410-952-0908.

14.    A search of law enforcement databases established that the telephone number that CASCIO provided for "KYLE" (908-433-3176) was registered to KYLE TRACEY, born December 1982. The search also resulted in information suggesting that TRACEY is the owner of Growlife LLC, a company that is involved in the marijuana growing business. After learning this information, I seized the currency from CACIO's grey backpack.[1]

---

[1] CASCIO was released after the interview, but he had missed his flight to California. I understand that CASCIO declined to be rebooked on a later flight.

5

15.     Meanwhile, as the interview and seizure in Baltimore was concluding, HSI officers tried to locate CASCIO'S checked luggage.  Based upon the information provided by CASCIO, and the Delta airline tickets in his possession, HSI agents knew that CASCIO was planning to travel to Los Angeles, California on Delta Air Lines flight 1332.  HSI Special Agent Thomas P. Hill contacted Delta Air Lines personnel to request permission for Los Angeles Police Officer Vanessa Keortge and her trained drug-detection dog, "Cobra," to examine the exterior of the luggage that was aboard flight 1332 before it was placed on the luggage carousal at Los Angeles International Airport (LAX).

16.     Delta Air Lines consented to SA Hill's request and, after Delta flight 1332 landed at LAX, local law enforcement officers and SA Hill offloaded approximately 40 pieces of luggage from the flight and placed them on the tarmac next to the aircraft.  Officer Keortge and Cobra then examined the exterior of the luggage.  Officer Keortge stated to SA Hill that Cobra positively alerted to two black duffle-style roller bags, from the brand "The North Face."  SA Hill subsequently took custody of the duffle bags.

17.     The airline-generated computerized bag tag information for the two duffle bags was as follows:

a.     Duffle Bag No. 1 – tag number 4006739069 with recipient information, "AGENT BWI/JA 24652A, 01/02, PNR: F8YMZ7, 04APR17 1105, CASCIOJR/JOSEPHMICH, DELTA PRIORTY LAX, DL 1332, 1437 04APR;, MSP DL 1451, DB HOT, 1209 04APR"; and,

b.     Duffle Bag No. 2 – tag number 4006739070 with recipient information, "AGENT BWI/JA 24652A, 02/02, PNR: F8YMZ7, 04APR17 1105,

CASCIOJR/JOSEPHMICH, DELTA PRIORTY LAX, DL 1332, 1437 04APR;, MSP DL 1451, DB HOT, 1209 04APR.

18.     Based on these tags, Delta Air Lines confirmed that the two black duffle-style roller bags belonged to CASCIO (the "DUFFLE BAGS"). In addition, apart from the airline-generated tags, each of the DUFFLE BAGS bore a personal bag tag that reflected the name "Joseph Cascio" and the telephone number, 410-952-0908. This was the same telephone number CASCIO provided to TFO Hayes and me when we interviewed him at BWI.

19.     SA Hill subsequently obtained a warrant to search the DUFFLE BAGS from the United States District Court for the Central District of California. This federal search warrant, attached as Exhibit A, is incorporated here by reference.

20.     During the execution of the search warrant at LAX, the following items were seized from CASCIO'S DUFFLE BAGS:

       a.     86.00 grams of marijuana;

       b.     64.00 grams of marijuana wax;

       c.     268.00 grams of marijuana paste;

       d.     (2) marijuana pipes with residue; and,

       e.     $107,140.00 in U.S. Currency.

## IV.  CONCLUSION

WHEREFORE, it is hereby requested that United States Homeland Security Investigations be authorized to seize, pursuant to 21 U.S.C. § 881(b), 18 U.S.C. § 981(b), and 21 U.S.C. § 853(f), the $162,240.00 in United States currency seized on April 4, 2017, from Joseph Michael CASCIO in Baltimore, Maryland and Los Angeles, California, because there is probable cause to believe that these funds constitute (1) money furnished and intended to be furnished in

exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds

traceable to such an exchange; and (3) money used and intended to be used to facilitate a

violation of the Controlled Substances Act in violation of 21 U.S.C. § 841, and are thus are

subject to forfeiture pursuant to 21 U.S.C. §§ 881(a)(6) and 853(a).

Robert J. Swain III
Homeland Security Investigations

Sworn to before me this 22nd day of ___June___, 2017

Hon. Stephanie A. Gallagher
United States Magistrate Judge

17-1754SAG

# EXHIBIT A

AO 106 (Rev. 04/10)  Application for a Search Warrant (USAO CDCA Rev. 01/2013)

**ORIGINAL**

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Two black duffle bags seized on April 4, 2017, and currently<br>in the custody of Immigration and Customs Enforcement,<br>Homeland Security Investigations in Los Angeles, CA, as<br>described in Attachment A | )<br>)<br>)<br>)<br>)<br>)<br>) |

FILED
CLERK, U.S. DISTRICT COURT

APR -7 2017

CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

Case No.  2:17-MJ-00763

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____Central_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy, Distribution and Possession with<br>Intent to Distribute Controlled Substances |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Thomas Hill, Special Agent, ICE HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/7/17__

_____
*Judge's signature*

City and state:  Los Angeles, California

Gail J. Standish
*Printed name and title*

AUSA: Victoria A. Degtyareva x17635

**ATTACHMENT A**

ITEMS TO BE SEARCHED

The following bags seized on April 4, 2017, and currently in the custody of Immigration and Customs Enforcement, Homeland Security Investigations in Los Angeles, California:

a.    One black "The North Face" rolling duffle bag, bearing airline bag tag number 4006739069 and a computer generated label with the following recipient information: "AGENT BWI/JA 24652A, 01/02, PNR: F8YMZ7, 04APR17 1105, CASCIOJR/JOSEPHMICH, DELTA PRIORTY LAX, DL 1332, 1437 04APR;, MSP DL 1451, DB HOT, 1209 04APR";

b.    One black "The North Face" rolling duffle bag, bearing airline bag tag number 4006739070 and a computer generated label with the following recipient information: "AGENT BWI/JA 24652A, 02/02, PNR: F8YMZ7, 04APR17 1105, CASCIOJR/JOSEPHMICH, DELTA PRIORTY LAX, DL 1332, 1437 04APR;, MSP DL 1451, DB HOT, 1209 04APR."

## ATTACHMENT B

ITEMS TO BE SEIZED

The following items are to be seized from the bags described in Attachment A, which constitute evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 846 (Conspiracy to Distribute Controlled Substances), and 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances):

a.   Any controlled substances;

b.   Currency, money orders, bank checks, or similar monetary instruments in quantities over $1000; and

c.   Packaging material.

## AFFIDAVIT

I, Thomas Hill, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.    This affidavit is made in support of an application for a search warrant for two black duffle bags seized on April 4, 2017, and currently in the custody of Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in Los Angeles, California (the "DUFFLE BAGS"), as described more fully in Attachment A, which is incorporated by reference.  The requested search warrant seeks authorization to seize evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 846 (Conspiracy to Distribute Controlled Substances), and 841(a)(1) (Distribution and Possession with Intent to Distribute Controlled Substances), as described more fully in Attachment B, which is also incorporated by reference.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. BACKGROUND FOR SPECIAL AGENT THOMAS HILL

3.     I am a Special Agent ("SA") with ICE HSI, within the
Department of Homeland Security ("DHS") and have been so
employed since September 6, 2015.  I am currently assigned to
the Office of Assistant Special Agent in Charge, Los Angeles
International Airport ("LAX") Group 1.  As part of my duties as
an HSI SA, I investigate various criminal violations relating to
threats to national security and public safety, human smuggling
and trafficking, drug smuggling, arms counter-proliferation,
violent gangs, money-laundering and financial crimes, customs
and trade fraud, immigration fraud, cybercrimes, and child
exploitation.  I am a graduate of the Federal Law Enforcement
Training Center's Criminal Investigator Training Program
("CITP") and Homeland Security Investigations Special Agent
Training ("HSI-SAT"), where I received over six months of
training relative to conspiracy investigations, child
exploitation investigations, general smuggling investigations,
smuggling of arms and strategic technology, confidential source
handling, drug identification, federal drug law, and various
surveillance and investigative techniques.  Prior to starting in
my current position, I was a Border Patrol Agent ("BPA") from
December 2007 to October 2011.  I was also an Immigration
Enforcement Agent ("IEA") from October 2011 to November 2014,
and again from June 2015 to September 2015.  As a law
enforcement officer within the meaning of Section 2510(7) of
Title 18, United States Code, I am empowered by law to conduct
investigations of and make arrests for federal offenses.

4.    I have received specialized training pertaining to electronic and physical surveillance procedures and I have been involved in numerous investigations dealing with the possession, manufacture, distribution and importation of controlled substances.

5.    Through these investigations, my training and experience, and conversations with other agents and law enforcement personnel, I have become familiar with the methods used by drug traffickers to smuggle and safeguard narcotics, to distribute drugs, and to collect and launder drug proceeds.

### III. SUMMARY OF PROBABLE CAUSE

6.    On April 4, 2017, law enforcement officers discovered during a consensual search that JOSEPH MICHAEL CASCIO ("CASCIO"), who was traveling through Baltimore Washington International Airport ("BWI"), had approximately $55,100 in cash in his carry-on baggage.  A trained drug-detecting dog later alerted to CASCIO's carry-on baggage for the presence of drugs or other items, such as the proceeds of drug sales, which have been contaminated by drugs.  CASCIO did not board his intended flight to Los Angeles International Airport ("LAX"), but his checked luggage - two duffle bags (the "DUFFLE BAGS") - were aboard the flight.  When the flight arrived at LAX, a trained drug-detecting dog positively alerted to the DUFFLE BAGS.

### IV. STATEMENT OF PROBABLE CAUSE

**A.    Background**

7.    Based on my training and experience as a Special Agent, and the collective experiences related to me by fellow

3

Special Agents who specialize in investigations relating to the
transporting of drugs and proceeds from drug sales, I am aware
of the following:

        a.    The Los Angeles area is a major source area for
drugs.  As such, drugs are frequently transported from the Los
Angeles area via drug trafficking couriers using commercial
international and domestic airline flights, and the proceeds
from drug sales are frequently returned to the Los Angeles area
via drug trafficking couriers using commercial international and
domestic airline flights.  These proceeds are generally in the
form of cash, money orders, bank checks, or similar monetary
instruments in amounts over $1,000.

        b.    Drug proceeds often contain the odor of drugs
because they have been contaminated or associated with the odor
of one or more types of drugs.

        c.    Individuals involved in drug trafficking will
often conceal drugs and drug proceeds in their checked baggage
or carry-on baggage.  While traveling using domestic airline
flights, drug traffickers are not required to declare to airline
officials, the Transportation Security Administration ("TSA"),
or United States Customs and Border Protection ("CBP") officers
that they are traveling with large amounts of currency, thus
making it easier to avoid detection by law enforcement.

        d.    Individuals involved in drug trafficking use
domestic commercial airlines because of their speed,
reliability, and the ability to travel long distances with
minimal law enforcement scrutiny.  Drug traffickers use domestic

4

commercial airlines because it allows multiple drug traffickers to travel together with large amounts of drugs and/or drug proceeds to ensure that their drugs and/or drug proceeds reach the intended destination if one or more of the traffickers are detained by law enforcement.

e.    It is common practice for large-scale drug traffickers to travel to the purchase and distribution areas used to facilitate their trafficking.  After purchasing drugs, drug traffickers will often transport the drugs or cause the drugs to be transported to areas in which they will distribute the drugs, often using domestic commercial airlines to do so.

f.    Individuals involved in drug trafficking generally sell drugs for cash.  Therefore, drug traffickers typically have significant amounts of cash on hand, as proceeds of sales, to purchase their own supplies, or as profits from their drug-trafficking activities.

8.    Luggage that is suspected to contain drugs or drug proceeds is scrutinized by Special Agents through further investigation, which may include examination by a trained drug-detection dog.

**B.    Seizure of Suspected Drug Proceeds from CASCIO's Carry-On Baggage**

9.    Based on my participation in this investigation, as well as my conversations with other law enforcement officers who participated in this investigation, I know the following:

a.    On April 4, 2017, I received an e-mail tip from HSI Group Supervisor ("GS") Christopher Yoder that CASCIO was

traveling through BWI with a large amount of U.S. currency. CASCIO had a ticket for Delta Airlines Flight 1332 from Baltimore to Los Angeles, with a layover in Minneapolis, Minnesota.

b.     During a consensual search of CASCIO's carry-on baggage, law enforcement officers discovered a total of approximately $55,100 in cash in CASCIO's backpack. After the search, a trained drug-detection dog positively alerted to CASCIO's backpack, indicating the presence of drugs or other items such as proceeds from the sale of drugs, which have been recently contaminated by or associated with the odor of drugs.

c.     GS Yoder told me that CASCIO did not board flight 1332 because he was being questioned by law enforcement officers, but that CASCIO's checked luggage was en route to LAX.

C.     **Positive Drug-Detection Dog Hits on the DUFFLE BAGS**

d.     On April 4, 2017, I spoke with Delta Airlines personnel and requested permission for Los Angeles Police Department Officer Vanessa Keortge and her trained drug-detection dog, "Cobra," to examine the exterior of the luggage that was aboard flight 1332 before it was placed on the luggage carousal at LAX. Delta Airline personnel consented to my request.

e.     After flight 1332 landed at LAX, other law enforcement officers and I offloaded approximately 40 pieces of luggage from the flight and placed them on the tarmac next to the aircraft. Officer Keortge and Cobra then examined the exterior of the luggage. Officer Keortge told me that Cobra

positively alerted to the DUFFLE BAGS, indicating the presence of drugs or other items such as proceeds from the sale of drugs, which have been recently contaminated by or associated with the odor of drugs. Attached as Exhibit 1, and incorporated by reference, is a true and correct copy of information provided to me by Officer Keortge regarding Cobra's training and history in detecting drugs, as well as the examination of the DUFFLE BAGS.

       f.   The bag tag information on the DUFFLE BAGS matched the bag tag information provided by Delta Airlines for CASCIO's two pieces of checked luggage.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

7

## V.  **CONCLUSION**

10.  For all the reasons above, there is probable cause to
believe that the DUFFLE BAGS, as described in Attachment A,
contain evidence, fruits, and instrumentalities of violations of
Title 21, United States Code, Sections 846 (Conspiracy to
Distribute Controlled Substances), and 841(a)(1) (Distribution
and Possession with Intent to Distribute Controlled Substances),
as described in Attachment B.

Thomas Hill
Special Agent
Immigration and Customs
Enforcement, Homeland Security
Investigations

Subscribed to and sworn before me
this 7th day of April, 2017.

UNITED STATES MAGISTRATE JUDGE

8

# EXHIBIT 1

1      Your Affiant is Vanessa Keortge, Serial No. 30898.  Your

2    affiant has been a Los Angeles Police Officer since 1994, and is

3    currently assigned to Gang and Narcotics Division, K-9 Squad.

4    Your Affiant has attended numerous classes, seminars, training

5    lectures and on the job training in the field of narcotics given

6    by other narcotics experts.  These experts are from varied areas

7    of narcotics enforcement including LAPD, DEA, ATF, FBI, and other

8    agencies. Your Affiant, has attend and completed the Los Angeles

9    Police Department 40- hour academy narcotic training (sales,

10   packaging, usage); completed a 5-day narcotics course, put on by

11   narcotics training unit; a post certify 2-day Narcotics training

12   course for 11550 and 11552 H&S, loitering for the purpose of

13   sales or purchasing narcotics.

14     Your Affiant has worked various specialized units for over

15   twenty-two years and has directly made, participated in/or

16   assisted in over 1500 various narcotic related arrest/violations,

17   the bulk of which were for sales of various controlled

18   substances. Your Affiant has worked under and is currently

19   working under the direction of senior narcotic enforcement

20   officers. Your Affiant has observed first hand, the methods used

21   by street dealers and users in the course of using narcotics,

22   buying, selling, transportation, packaging for sales and sales of

23   narcotics. Your Affiant has also testified as a narcotics expert

24   in Municipal and Superior Courts of California.

25     Your Affiant is currently a member of NPCA (National Police

26   Canine Association) and IPWDA (International Police Working Dog

27   Association).  In September 2016, after eleven years of handling

28   detection canines, your Affiant was assigned to the Gang and

29   Narcotics Division, Narcotics K-9 Squad. On September 4, 2016,

30   your Affiant assumed the responsibility of canine "Cobra" #K9-

31   294, a LAPD narcotics detection canine.   Your Affiant's

32   responsibilities consist of the care, training and handling of

33   the canine.   "Cobra" has received over (*93*) hours of training,

34   during which time she has successfully found over (*377*) training

35   aids, which consists of actual narcotics.   "Cobra" alerts on the

36   scent of narcotics, that she is imprinted on.   Her alert consists

37   of physical and behavioral reactions, which includes a heightened

38   emotional state in which she focuses on the source of the scent.

39   "Cobra" becomes very possessive of the area in which she has

40   detected the scent narcotics for which she is trained. The Los

41   Angeles Police Department and the National Police Canine

42   Association (NPCA) have certified "Cobra" and your Affiant as a

43   team for use in the field.   "Cobra" will positively alert her

44   handler to the scent of heroin, cocaine, marijuana, opium and

45   methamphetamine.   "Cobra" was placed into service in December

46   2016.

47       On *APRIL 4, 2017*       your Affiant responded to a

48   request for a narcotic detection canine.   "Cobra" alerted to the

49   scent of narcotics on or in:

50   *TWO BLACK BAGS NEAR GATE 54B.*

51   _____

52   _____

53   _____

54   _____

55  I declare under the penalty of perjury that all of the above is
56  true and correct.  Executed at _5:15_ am/pm on the _4TH_ day
57  of _APRIL 2017_ in _LOS ANGELES_ County.
58
59
60  _V. Keortge #30898_
61  Officer Vanessa Keortge #30898
62  //
63  //
64  //
65  //
66  //
67  //
68  //
69  //
70  //
71  //
72  //
73  //
74  //
75  //
76  //
77  //
78  //
79  //
80  //
81  //